Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| NEW WORLD BANK INTERNATIONAL CORP.<br><br>RECURRENTE<br><br><br>V.<br><br>OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS<br><br>RECURRIDOS | TA2026RA00168 | *Revisión Judicial De Decisión Administrativa* procedente de la Oficina Del Comisionado de Instituciones Financieras<br><br>Caso Núm. OCIF-2026-D-IFE-53-3086-02<br><br><br>Sobre: Multa Administrativa |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 8 de junio de 2026.

## I.

El 13 de abril de 2026, New World Bank International Corp. (New World Bank o recurrente), presentó digitalmente un *Recurso de Revisión Administrativa*,[1] en la que nos solicitó que revocáramos la *Orden* de la Oficina del Comisionado de Instituciones Financieras (OCIF) del 6 de febrero de 2026, archivada y notificada ese mismo día.[2] En adición, New World Bank presentó una *Moción en Solicitud de Orden para que se eleve el expediente administrativo*.[3]

El 14 de abril de 2026, emitimos una *Resolución* en donde le concedimos, por un lado, cinco (5) días a New World Bank, para que justificaran la solicitud de elevar el expediente administrativo. Por

---

[1] *Véase* entrada núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[2] *Véase* apéndice núm. 2 de la entrada núm. 1 de SUMAC-TA.
[3] *Véase* entrada núm. 2 de SUMAC-TA.

otro lado, le dictamos el término correspondiente a la OCIF para exponer su posición.[4]

En cumplimiento con nuestra *Resolución*, New World Bank presentó, el 20 de abril de 2026, una *Moción en Cumplimiento de Resolución del 14 de abril de 2026*. Mediante dicha moción, argumentó que el expediente era necesario para poder evaluar si la actuación de la OCIF estaba fundamentada en evidencia sustancial. Además, New World Bank alegó no tener acceso a todos los documentos utilizados en el proceso deliberativo de la OCIF, por lo cual no es posible tener toda la información del contenido de los apéndices del recurso de epígrafe.[5]

El 21 de abril de 2026, emitimos una *Resolución* donde declaramos Ha Lugar la solicitud de New World Bank y ordenamos a la OCIF a presentar una copia certificada del expediente administrativo.[6]

Consecuentemente, el 5 de mayo de 2026, la OCIF compareció mediante una *Moción en Cumplimiento de Orden sobre Presentación de Expediente Administrativo*, donde certificó haber presentado el expediente administrativo bajo sobre sellado.[7]

Transcurridos otros trámites procesales, la OCIF radicó el 11 de mayo de 2026 una *Solicitud de Prórroga para Presentar Alegato en Oposición*.[8] El 12 de mayo de 2026, declaramos la solicitud Ha Lugar mediante *Resolución*.[9]

El 13 de mayo de 2026, New World Bank presentó una *Moción en Solicitud de Orden sobre expediente administrativo presentado por OCIF y de Autorización para Suplementar Recurso de Revisión*

---

[4] *Véase* entrada núm. 3 de SUMAC-TA. A su vez, en dicha *Resolución* ordenamos el cambio de recurso de una apelación a una revisión judicial, con el correspondiente cambio de indicador alfanumérico. Dicho cambio fue efectuado el 14 de abril de 2026, ver entrada núm. 4 de SUMAC-TA.

[5] *Véase* entrada núm. 5 de SUMAC-TA.

[6] *Véase* entrada núm. 7 de SUMAC-TA.

[7] *Véase* entrada núm. 8 de SUMAC-TA.

[8] *Véase* entrada núm. 10 de SUMAC-TA.

[9] *Véase* entrada núm. 11 de SUMAC-TA.

*Administrativa.*[10] El 14 de mayo, le concedimos término a la OCIF para exponer su posición en cuanto a la petición del recurrente.[11]

El 19 de mayo de 2026, la OCIF presentó su *Alegato en Oposición a Recurso de Revisión Administrativa,*[12] en conjunto a una *Solicitud para Presentar Escrito en Exceso de Páginas.*[13] Allí, nos solicitó que confirmáramos la *Orden* recurrida. Por otra parte, también radicó una *Oposición a Moción en Solicitud de Orden*, donde nos peticionó que denegáramos la petición del recurrente, en cuanto a la presentación de un escrito suplementario.[14]

El 22 de mayo de 2026, emitimos una *Resolución* mediante la cual, por un lado, autorizamos la presentación del recurso en exceso de páginas, y por otro, denegamos la solicitud del recurrente en cuanto al expediente administrativo y la petición para suplementar su recurso.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y pormenorizamos los hechos procesales más relevantes para su atención.

**II.**

El caso de marras tuvo su génesis el 25 de junio de 2024, cuando la OCIF cursó una carta a New World Bank, donde le informó que estarían realizando un examen con relación a la Ley de Secreto Bancario (BSA, por sus siglas en inglés) y las medidas implementadas para prevenir el lavado de dinero.[15] Mediante dicha misiva, el examinador de la OCIF les indicó que el examen comenzaría el 2 de agosto de 2024, evaluaría las operaciones desde el 15 de agosto de 2018 hasta el 31 de marzo de 2024, y le específico

---

[10] *Véase* entrada núm. 12 de SUMAC-TA.
[11] *Véase* entrada núm. 13 de SUMAC-TA.
[12] *Véase* entrada núm. 14 de SUMAC-TA.
[13] *Véase* entrada núm. 15 de SUMAC-TA.
[14] *Véase* entrada núm. 16 de SUMAC-TA.
[15] *Véase* anejo núm. 7 de la entrada núm. 1 de SUMAC-TA.

una información suplementaria que necesitarían para el 10 de julio de 2024.

Según se desprende de las alegaciones, corroborado por un estudio del expediente confidencial ante nos, el proceso de examen comenzó el 12 de agosto de 2024. El 14 de noviembre de 2024, la OCIF celebró, junto a New World Bank, una reunión preliminar (llamada *pre-exit meeting*, por ser previa a la reunión de cierre) donde discutieron los hallazgos preliminares del examen. Con dicha reunión "pre-salida", concluyó la etapa del examen presencial. Posteriormente, el 28 de febrero de 2025, la OCIF le comunicó a New World Bank que se encontraban en la etapa final, por lo cual tendrían que calendarizar una reunión de salida, en donde discutirían el reporte final. A partir de esa reunión, New World Bank contaría con treinta (30) días para responder por escrito.

Tras algunos intercambios de correos electrónicos, New World Bank informó que no estaría disponible para llevar a cabo la reunión, en la fecha pautada para la reunión de salida. En consecuencia, la OCIF remitió a New World Bank una copia del *Report of Examination* (el *Reporte*) el 19 de marzo de 2025, donde, a su vez, le notificó que contaba con treinta (30) días para someter cualquier respuesta formal. New World Bank certificó haber recibido el *Reporte* el 14 de mayo de 2025. El 28 de mayo de 2025, New World Bank solicitó una extensión de sesenta (60) días para contestar el *Reporte*. Acto seguido, el 30 de mayo de 2025, la OCIF replicó que, dadas las circunstancias particulares del caso, no se justificaba una extensión de sesenta (60) días y que, en lugar de otorgar el término pedido, le concedió a New World Bank quince (15) días adicionales para responder.

Transcurrido el término correspondiente, y luego de varios intercambios de comunicaciones entre las partes, el 30 de junio de 2025, New World Bank presentó su contestación formal al *Reporte*.

Luego de examinar el expediente, el *Reporte* y su contestación, la OCIF emitió una *Orden* el 6 de febrero de 2026 donde le impuso una multa ascendente a $25,000.00.[16] Específicamente, tras incorporar las determinaciones de hechos realizadas en el *Reporte*, la OCIF encontró que los mecanismos anti-lavado de dinero y para cumplir con el BSA estaban deficientes, igual que su sistema de monitoreo de actividades sospechosas.[17] A su vez, la OCIF determinó que New World Bank estaba en violación del artículo 14 (a) de la *Ley Reguladora del Centro Financiero Internacional*, Ley Núm. 273-2012, 7 LPRA sec. 3093, y, por otra parte, que había incumplido con el requisito de informar la designación de una nueva directora de finanzas (CFO) en el 2020. El desglose de la multa fue como sigue: (1) $10,000.00 en virtud de violar las secciones (f)(2) y (3) del art. 8 la Ley Núm. 273-2012, *supra,* sec. 3087; (2) $5,000.00 por incumplir con el artículo 14(a) de la Ley Núm. 273-2012, *supra*; (3) $5,000.00 por violar el artículo 4(d) de la Ley Núm. 273-2012, *supra*; y (4) $5,000.00 por incumplir con la Carta Circular 93-55-01 de dicha oficina.[18]

Inconforme con la mencionada decisión, New World Bank presentó a la OCIF, el 26 de febrero de 2026, una *Moción de Reconsideración*.[19] Allí argumentó que la *Orden* fue irrazonable y carente de fundamentos, por lo cual debía de ser reconsiderada en su totalidad. En suma, New World Bank esbozó los siguientes argumentos: que el procedimiento no cumplió con las garantías mínimas que exige el debido proceso de ley, que la OCIF erró en determinar que sus sistemas de monitoreo y de cumplimiento con la BSA eran deficientes, que la OCIF erró en encontrar que no tenían su lugar principal de negocios en Puerto Rico, que la OCIF se

---

[16] *Véase* apéndice núm. 2 de la entrada núm. 1 de SUMAC-TA.
[17] Íd., en la pág. 6.
[18] Íd.
[19] *Véase* apéndice núm. 1 de la entrada núm. 1 de SUMAC-TA.

equivocó en determinar que se había incumplido con el mínimo requerido de empleados a tiempo completo y, por último, que estos sí habían notificado a la OCIF de la designación de la CFO. El 19 de marzo de 2026, la OCIF emitió una *Resolución Acogiendo Moción de Reconsideración,* en donde indicó que se acogía la moción y que se expresarían en conformidad.[20]

El 9 de abril de 2026, la OCIF dictó una *Resolución Denegando en parte y Otorgando en parte la Moción de Reconsideración.*[21] En particular, la OCIF rescindió la multa de $5,000.00 que se había impuesto al determinar que New World Bank había incumplido con el requisito mínimo de empleados a tiempo completo. Con esta modificación, la OCIF confirmó el resto de las multas, quedando confirmada una multa ascendente a $20,000.00.

Insatisfecho, el recurrente presentó el recurso de revisión judicial de epígrafe, donde le imputó a la agencia la comisión de los siguientes errores:

> **Primer Error**: Erró OCIF al violar el debido proceso de ley de New World Bank.
>
> **Segundo Error**: Erró OCIF al imponer a New World Bank las multas por violaciones a la Ley Núm. 273-2012 y el BSA.
>
> **Tercer Error**: Erró OCIF al imponer una multa a New World Bank por supuesta violación a la Carta Circular 93-55-01[.]
>
> **Cuarto Error**: Erró OCIF al imponer a New World Bank unas multas desproporcionadas.

En apretada síntesis, el recurrente alegó que el procedimiento llevado a cabo por la OCIF durante el examen de que fue objeto, no honró su derecho a un debido proceso de ley. Por otro lado, adujo que la determinación de la OCIF en cuanto al incumplimiento con la Ley Núm. 273-2012, *supra,* no se sostenía por el expediente. Finalmente, esgrimió que la OCIF carecía de autoridad legal para

---

[20] *Véase* apéndice núm. 19 de la entrada núm. 1 de SUMAC-TA.
[21] *Véase* apéndice núm. 21 de la entrada núm. 1 de SUMAC-TA.

imponer una multa por el incumplimiento con una carta circular y, también, que las multas impuestas eran desproporcionadas *vis a vis* las circunstancias particulares del caso.

Por su parte, la OCIF compareció y negó las alegaciones en cuanto a los procedimientos llevados a cabo, mientras que, a su vez, alegó que la determinación se encuentra fundamentada en evidencia sustancial a base de su experiencia administrativa, por lo cual corresponde confirmar la *Orden.*

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.,* (LPAU) establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. ***Capó Cruz v. Junta de Planificación***, 204 DPR 581, 590-591 (2020). La *Revisión Judicial* es aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones. Íd. LPAU, sec. 9671. La *Revisión Judicial* de determinaciones administrativas responde principalmente a delimitar la discreción de las agencias y velar que ejerzan sus funciones conforme a la ley. ***Mun. de San Juan v. J.C.A.***, 149 DPR 263, 279 (1999). La intervención judicial se rige por los parámetros establecidos en la LPAU. ***Simpson, Passalacqua v. Quirós, Betances***, 214 DPR 370 (2024). Asimismo, la sección 4.2 de la LPAU, supra, sec. 9672, establece que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

La LPAU, *supra,* dispone que una parte adversamente afectada por una orden o resolución de una agencia puede acudir en *Revisión Judicial* al tribunal siempre y cuando haya agotado los remedios administrativos. ***Simpson, Passalacqua v. Quirós, Betances***, supra, pág. 379. Ahora bien, para que se pueda ejercer efectivamente el derecho a la revisión judicial, la decisión de una agencia tiene que estar debidamente fundamentada. ***L.P.C. & D., Inc. v. A.C.***, 149 DPR 869, 878 (1999). Algunos de los objetivos que se logran al requerir que la decisión de una agencia administrativa esté fundamentada son: (1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo y, al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas según el concepto de especialización y destreza. ***L.P.C. & D., Inc. v. A.C.***, supra, pág. 879.

Por otro lado, la sección 4.5 de la LPAU, *supra,* sec. 9675, dispone que, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de basarse en evidencia sustancial que surja del expediente administrativo. Es menester

señalar que, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Íd.

En síntesis, la *Revisión Judicial* de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. **Otero Rivera v. Bella Retail Group, Inc.**, 214 DPR 473, 484-485 (2024).

**B.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. **Otero v. Toyota**, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. **Otero v. Toyota**, supra, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. **Rebollo v. Yiyi Motors**, 161 DPR 69, 78 (2004). Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. **Otero v. Toyota**, supra, pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". **Otero v. Toyota**, supra, pág. 728.

La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. **Otero v. Toyota**, supra, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que

existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero v. Toyota*, supra, pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero v. Toyota*, supra, pág. 728.

Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero v. Toyota*, supra, pág. 730. Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo v. Yiyi Motors*, supra, pág. 78. Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo v. Yiyi Motors*, *supra*, pág. 77.

## C.

El Artículo II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico, establece que "[n]inguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley". Art. II, Sec. 7, **Const. ELA**, LPRA, Tomo 1. En el ámbito judicial y cuasi judicial, el debido proceso de ley se manifiesta en dos dimensiones: la procesal y la sustantiva. *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *Domínguez Castro et al. v. ELA I*, 178 DPR 1, 35 (2010). En lo pertinente al presente recurso, nos centraremos en el debido proceso de ley en su vertiente procesal.

"[E]l debido proceso de ley se refiere al 'derecho de toda persona a tener un proceso justo y con todas las debidas garantías

que ofrece la ley, tanto en el ámbito judicial como en el administrativo'". *Aut. Puertos v. HEO*, supra, pág. 428 (citando a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995)). En su vertiente procesal, el debido proceso de ley "requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso que se adherirá a los principios de justicia e imparcialidad". *Aut. Puertos v. HEO*, supra, pág. 428.

La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motor, LLC v. Junta de Subastas de la Administración de Servicios Generales*, 209 DPR 122, 131 (2022); *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010). De igual forma, la Sección 3.1 de la LPAU, *supra*, sec. 9641, enumera las garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo celebrado ante una agencia, como son: la notificación oportuna de los cargos contra una parte, a presentar evidencia, a una adjudicación imparcial y a que la decisión sea basada en el expediente. *PVH Motor, LLC v. Junta de Subastas de la Administración de Servicios Generales*, supra. Una determinación de una agencia que se haga en contravención a estas pautas mínimas no puede prevalecer. *San Gerónimo Caribe Project v. A.R.Pe.*, 174 DPR 640, 660 (2008).

Como ha reconocido el Tribunal Supremo, un proceso investigativo o de supervisión administrativa no constituye, por sí mismo, un procedimiento adjudicativo. *Asoc. Miembros de la Policía v. Superintendente de la Policía*, 136 DPR 271, 281

(1994). A diferencia de un procedimiento adjudicativo formal, en una investigación administrativa no existe necesariamente una controversia trabada entre partes con intereses adversos que requiera adjudicación inmediata. Íd. Su propósito es precisamente permitir al ente regulador investigar posibles incumplimientos de ley o reglamentarios, recopilar información y determinar si procede o no tomar acción ulterior, incluyendo la posibilidad de instar una querella o iniciar cualquier otro proceso adjudicativo. *Figueroa Segarra v. Oficina Del Comisionado De Seguros,* KLRA201900004 (30 de enero de 2019). En ausencia de una querella formal o del inicio de un proceso adjudicativo, lo que existe es simplemente una investigación o examen regulatorio dentro del ámbito de supervisión de la agencia. Íd. Véase, *Asoc. Miembros de la Policía v. Superintendente de la Policía*, *supra.*

**D.**

La *Ley de la Oficina del Comisionado de Instituciones Financieras*, Ley Núm. 4 de 11 de octubre de 1985 (Ley Orgánica de la OCIF), 7 LPRA sec. 2001 *et seq.*, creó la OCIF con el fin de delegar la fiscalización y regulación de la industria financiera a una entidad especializada. Artículo 3 de la Ley Orgánica de la OCIF, *supra.* El artículo 10 del referido estatuto enumera las facultades del Comisionado de la OCIF. Artículo 10 de la Ley Orgánica de la OCIF, *supra.* En particular, dicta el estatuto que:

> **(a)** El Comisionado, además de los poderes y facultades transferidos por la presente, tendrá poderes y facultades para:
>> **(1)** Reglamentar sus propios procedimientos y normas de trabajo.
>> **(2)** Instrumentar mediante reglamento cualquier disposición, definir con la aprobación de la Junta cualquier término no definido por esta ley u otras leyes que sea su responsabilidad administrar; **adoptar, aprobar, enmendar, o revocar aquellas reglas y reglamentos, órdenes, resoluciones y determinaciones necesarias al cumplimiento de esta ley**.

El Comisionado, antes de aprobar cualesquiera de los reglamentos dispuestos en esta ley o en cualesquiera otras leyes bajo su administración y jurisdicción, que no sean los de funcionamiento interno de su Oficina, los someterá a la Junta Financiera para su recomendación.

...

**(4)** Interponer cualesquiera remedios, acciones o procedimientos legales que fueran necesarios o convenientes para hacer efectivos los propósitos de esta ley o cualquier otra ley o reglamento, cuyo cumplimiento o fiscalización le haya sido asignada, ya sea representado por sus abogados o por el Secretario de Justicia, previa solicitud a tales efectos.

Además, el Comisionado deberá designar a un funcionario de la Oficina del Comisionado para que le brinde apoyo y asesoramiento al fiscal del Departamento de Justicia que tenga la encomienda de instar un procedimiento criminal por violación a las leyes, reglamentos u órdenes bajo la administración de la Oficina del Comisionado.

...

**(7)** Inspeccionar toda clase de récord y documentos de toda persona que conceda préstamos esporádicos o habitualmente, cuando lo considere conveniente al mejor interés público.

...

**(9) Imponer multas administrativas por las violaciones a las leyes que administra o las reglas, reglamentos y órdenes aprobados o dictados por él, según se señala en el Artículo 20 de esta ley** (7 L.P.R.A. § 2020). ... Artículo 10 de la Ley Orgánica de la OCIF, *supra* (énfasis suplido).

El artículo 20 regula las penalidades a la disposición del Comisionado, en virtud de su facultad de imponer multas administrativas contenida en el artículo 10(a)(9) de la Ley Orgánica de la OCIF. Prescribe, en parte, el referido artículo:

**(a)** Cualquier institución financiera o persona **que viole las disposiciones de esta ley o de los reglamentos promulgados a su amparo estará sujeta a una multa administrativa a ser determinada por el Comisionado**, que en ningún caso excederá de cinco mil dólares ($5,000). Cualquier institución financiera o persona que viole las disposiciones de las otras leyes y reglamentos bajo la administración y jurisdicción del Comisionado estará sujeta a la penalidad dispuesta para tal violación en la ley o reglamento que sea aplicable. ... Artículo 20 de la Ley Orgánica de la OCIF, *supra* (énfasis suplido).

Por otra parte, la *Ley Reguladora del Centro Financiero Internacional*, Ley Núm. 273-2012, 7 LPRA sec. 3081 *et seq.*,[22] se promulgó con el fin de promover la industria financiera internacional en la Isla. Exposición de Motivos de la Ley Núm. 273-2012, 2012 LPR 273. El artículo 3 de la Ley Núm. 273-2012 establece que el Comisionado de la OCIF está facultado para "adoptar, y podrá en adelante, de tiempo en tiempo, revocar, enmendar o suplementar, **reglas y reglamentos para que se cumpla con las disposiciones de esta Ley**...". Artículo 3(a)(1) de la Ley Núm. 273-2012, *supra,* 3082. Además, en virtud de la referida ley, el Comisionado tiene la obligación de "velar por la seguridad financiera y adecuacidad operacional de las entidades financieras internacionales y asegurarse de que éstas cumplan con las leyes y Reglamentos del Comisionado y con cualquier medida o requisito que el Comisionado les requiera mediante orden, reglamento o carta circular o documentos guía aplicables a las EFIs...". Artículo 3(a)(8) de la Ley Núm. 273-2012, *supra.*

Por otra parte, la Ley Núm. 273-2012, *supra*, le impone ciertos deberes a las Instituciones Financieras poseedoras de una licencia de entidad financiera internacional. Entre otras cosas, tienen que:

(1) **adoptar las políticas y procedimientos del negocio por escrito para asegurar que la entidad financiera internacional cumpla con las leyes estatales y federales aplicables, incluyendo esta Ley, la "Bank Secrecy Act", y la "USA Patriot Act"**;
(2) cumplir fielmente con todas las leyes estatales y federales aplicables, y con los reglamentos pertinentes para la entidad financiera internacional, incluyendo esta Ley, las disposiciones aplicables del "Bank Secrecy Act", y el "USA Patriot Act";
(3) radicar los informes de transacciones monetarias o de actividad sospechosa, según requeridos por el "Bank Secrecy Act" y el "USA Patriot Act", cuando sean necesarios; y
(4) tener en práctica las normas y procedimientos necesarios en el negocio para cumplir con lo dispuesto

---

[22] La Ley Núm. 273-2012 fue enmendada por la Ley Núm. 44-2024, lo cual alteró la numeración de algunos de los artículos. Las partes hacen referencia a la enumeración de los artículos previo a las enmiendas del 2024, por lo cual haremos referencia a la enumeración de los artículos como se encuentran en la ley aplicable al caso de marras, previo a las enmiendas.

por la OFAC, según aplique. 7 LPRA ant. sec. 3087. (Énfasis suplido).

Adicional a lo anterior, el artículo 18 de la Ley Núm. 273-2012, *supra*, enumera una serie de penalidades aplicables a las instituciones financieras internacionales. Pertinente al recurso ante nuestra consideración, prescribe el estatuto:

> **(e) Las disposiciones anteriores de este Artículo no deberán interpretarse como que en forma alguna limitan el poder del Comisionado para imponer multas administrativas por violaciones a esta Ley o a los Reglamentos del Comisionado**. El Comisionado queda autorizado a:
>> **(1) Imponer y cobrar multas administrativas no menores de cinco mil dólares ($5,000.00) ni mayores de veinticinco mil dólares ($25,000) por cada violación a las disposiciones de esta Ley o las disposiciones contenidas en los Reglamentos del Comisionado**.
>> **(2)** Imponer cualquier otro remedio que entienda necesario para hacer cumplir los propósitos de esta Ley.
>> **(3)** Imponer y cobrar multas administrativas no menores de mil dólares ($1,000) ni mayores de diez mil dólares ($10,000) por cada día en que la entidad financiera internacional deje de cumplir con los requerimientos u órdenes dictadas por el Comisionado. Artículo 18(e), 7 LPRA ant. sec. 3096. (Énfasis suplido).

### E.

En consonancia con sus facultades y deberes delegadas, la OCIF publicó la Carta Circular Núm. 93-55-01 (CC-93-55-01). Por medio de esta, la OCIF pautó que toda institución financiera tiene que informar todo nombramiento de cualquier director u oficial ejecutivo. La sección "d" de la CC-93-55-01 define lo que es un oficial ejecutivo, y establece que "[s]ignifica una persona que tiene autoridad para influenciar significativamente … en la formulación de las políticas públicas de la Institución. Se presumirá que es un 'Oficial Ejecutivo' para propósitos de esta Carta Circular … el Principal Oficial Ejecutivo, el Presidente, **el Principal Oficial a cargo de finanzas** …". Íd., en la pág. 2. Además, la CC-93-55-01 indica que "toda Institución vendrá obligada a notificar al

Comisionado la elección de todo Nuevo Director y/o el nombramiento de todo Oficial Ejecutivo, dentro de los treinta (30) días siguientes a la fecha en que … haya tomado posesión del cargo. …". Íd., en la pág. 3. Consecuentemente, la CC-93-55-01 detalla la información que tienen que brindar las Instituciones a la OCIF. Íd.

**IV.**

En el caso de marras, nos corresponde revisar si la OCIF actuó correctamente al imponer las multas administrativas que el recurrente impugna. Luego de una reconsideración parcial, la OCIF le impuso a New World Bank la suma de $20,000.00 en multas por violaciones a la Ley Núm. 273-2012, *supra*, el Reglamento Núm. 5653, el *BSA* y la Carta Circular No. 93-55.01.

Por su parte, la OCIF sostiene que actuó conforme a sus facultades y basado en el expediente administrativo. Aduce que, como resultado del examen realizado, la recurrida identificó múltiples incumplimientos por parte de la recurrente, relacionados con requisitos regulatorios básicos.

Tras un análisis objetivo, sereno y cuidadoso del expediente administrativo y del expediente judicial ante nos, en correcta práctica adjudicativa apelativa, resolvemos que la OCIF no cometió los errores señalados, por lo que corresponde confirmar la *Orden* recurrida. Un examen sosegado del expediente del caso, y a la luz de los factores esbozados en los estatutos vigentes y la jurisprudencia, entendemos que la OCIF actuó correctamente en la imposición de las multas cuestionadas. La determinación recurrida está sustentada por la evidencia que obra en el expediente.

Conforme a la normativa jurídica pormenorizada precedentemente, la revisión de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba

sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas.

Respecto al primer señalamiento de error, surge del expediente administrativo y judicial que, durante el periodo de examen, la parte recurrente tuvo la oportunidad de discutir ampliamente los hallazgos identificados durante el examen. También tuvo la misma oportunidad cuando la OCIF se proponía a concluir formalmente el proceso de examen. Además, nótese que se trata de un proceso de investigación administrativa el cual <u>no constituye un procedimiento adjudicativo</u> sujeto a todas las garantías procesales.

Respecto al segundo señalamiento de error, de una lectura sosegada del expediente administrativo confidencial, en particular del *Reporte*, constatamos que la OCIF concluyó, tras un pormenorizado examen, que la condición financiera de la parte recurrente era deficiente, sus operaciones carecían de control interno y no cumplían con lo requerido. Sobre los planes estratégicos, estos no estaban actualizados y eran irreales. Surge de los documentos examinados que los hallazgos fueron discutidos en una reunión virtual con la principal Oficial Financiera y el Presidente. El expediente administrativo demuestra palmariamente que la OCIF ejerció su función de supervisión y fiscalización de conformidad con las facultades que le han sido conferidas en virtud de la Ley Núm.273-2012, *supra*, los reglamentos y el *BSA*.

Respecto al tercer señalamiento de error, la Ley Núm. 273-2012, *supra*, sec. 3082, establece la obligación del Comisionado de velar por la adecuada seguridad financiera y operacional de las entidades financieras internacionales y que se asegure de que estas cumplan con las leyes y reglamentos y con cualquier medida o requisito que el Comisionado les requiera, incluyendo cartas

circulares. Por lo cual, contrario al argumento de la recurrente, la OCIF no carecía de autoridad para exigir el cumplimiento de lo dispuesto en la Carta Circular No. 93-55-01 e imponer la multa al respecto.

Respecto al cuatro señalamiento de error, las multas están sustentadas por evidencia sustancial que obra en el expediente administrativo y que responden a incumplimientos específicos identificados por la OCIF.

Los errores imputados a la agencia no fueron cometidos.

En virtud de todo lo anterior, procede confirmar la *Orden* emitida por la OCIF, toda vez que es conforme a en derecho. La recurrente no demostró que la OCIF haya actuado de forma arbitraria, ilegal o irrazonable. La determinación recurrida está respaldada por la evidencia sustancial que surge del expediente confidencial administrativo que hemos examinado.

**V.**

Por los fundamentos pormenorizados, se *confirma* la Orden recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones